United States District Court
Southern District of Texas
FILED

MAY 1 8 2005

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GARY GRAHAM, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | B-03084 |
| | § | |
| TOWN OF SOUTH PADRE | § | |
| ISLAND | § | |
| AND HARVEST | § | |
| MULTIMEDIA, | § | |
| INC., | § | |
|     Defendants. | § | |

## PLAINTIFF'S PRETRIAL STATEMENT

Plaintiff, Gary Graham, by and through his counsel of record, submits the following Pretrial Statement:

### I.
### APPEARANCE OF COUNSEL

*Attorney for Plaintiff*
Donald T. Cheatham
Law Office of Donald T. Cheatham
604 A West 9th Street
Austin, Texas 78701
(512) 494-1212 Telephone
(512) 494-1213 Facsimile

*Attorneys for Defendant Town of South Padre Island*
Eileen M. Leeds, Esquire

1

Willette & Guerra, L.L.P.
1534 E. 6th Street, Suite 200
Brownsville, Texas 78520
(956) 541-1846 Telephone
(956) 541-1893 Facsimile

*Attorney for Co-Defendant Harvest Multimedia*
Heriberto "Eddie" Medrano
Law Office of Heriberto Medrano
2009 East Harrison, Suite B
Harlingen, Texas 78550
(956) 428-2412 Telephone
(956) 428-2495 Facsimile

## II.
## PLAINTIFF'S STATEMENT OF THE CASE

### A. Plaintiff's Statement.

[1]Plaintiff Gary Graham [2] artistically composed a poetic lyric, which he lawfully copyrighted on March 26th 2001 under of the United States Code [3], Title 17, which Congress enacted under United States Constitution [4], Article 1, Section 8 Clause 8. Plaintiff obtained his valid **copyright** to the song lyrics for *"South Padre Island"* [5] under the statutory "A Poor Man's copyright" 17 USC.

Plaintiff approached Pelican West[6] for the possibility of recording the song,

---

[1] Our Emphasis Added Throughout.)
[2] Hereinafter referred to, as "Plaintiff"
All references hereinafter will be shortened. The complete reference first will appear, as a complete reference in Text. In a designated footnote, the reference will be in abbreviated form appearing within quotation marks. Thereafter in Text only will appear the designated abbreviation or acronym of what is attributed in quotation marks. The particular reference thereafter in text will contain solely the so quoted abbreviation or citation, as applicable, unless otherwise noted.
[3] "USC".
[4] "US Const.".
[5] "Song".
[6] "Pelican"

2

and subsequently entered into two contracts with that band and Damion Giacchino[7], the band leader. Plaintiff entered into a distribution agreement with Pelican, wherein both entities clearly intended to profit from the song which Plaintiff had conceived and brought to fruition.

Although Plaintiff had approached Defendant, Town of South Padre Island[8] about using the song as the "official" song of the island, he never intended that the song be distributed by that Defendant Town, without his prior approval and consent. Plaintiff was delighted the Town wished to use the song, and happily anticipated some workable consideration for his effort.

Unbeknown to Plaintiff, Defendant Town entered into a market and publication agreement with co-Defendant Harvest Multi Media Inc.[9] to re-record on a video disc CD-ROM, a version containing the Plaintiff's copyrighted song for promotion of their beachside resort city, which Pelican previously had recorded at the request of Plaintiff.

Harvest made no effort to ascertain the copyright or ownership status of that work.

Harvest made multiple copies—in excess of 5,000 of the song, on behalf of Defendant Town. Defendants, Town and Harvest both intended to distribute widely such CD-ROMs, which they did, and from which they hoped to obtain economic benefit. Both Defendants obtained benefit. Both Defendants infringed Plaintiff's copyright.

Plaintiff brought suit here in this Court for damages under the

---

[7] "Giacchino"
[8] "Town"
[9] "Harvest"

3

infringement provisions for damages of USC Title 17.

In the course of the Defendant Town's Summary Judgment proceedings, Plaintiff for the first time learned, that Pelican band leader, Giacchino on April 10, 2001 illegally obtained a copyright for both the words and music to the song, without consent or permission by Plaintiff, and contrary to two agreements between Plaintiff and that band leader, respectively of March 12th 2001 and June 6th 2001.

Giacchino was well aware on April 10, 2001 that Plaintiff had copyrighted the lyrics to the song on March 26th 2001.

Plaintiff incorporates herein by this reference all of the pleadings, documents, and exhibits of this Court's Record in this case in its entireties.

### III.
### JURISDICTION

This court has jurisdiction to hear this case as it involves federal questions associated with Title 17 of the United States Code.

### IV.
### CONTENTIONS OF THE PLAINTIFF

**A.  Contentions of the Plaintiff**
1. Plaintiff's copyright was infringed.
2. Defendants owe damages pursuant to statute for the copyright infringement and for each such copyright infringement, which would be the multiple statutory damages multiplied by the sum of the number of copies made of the illegally reproduced copyrighted song, added to the number of times SPI had the song aired in mass-media commercials as well as, reasonable attorney's fees and costs.

3.  Defendants failed to investigate and to ascertain who held the valid copyright for the material they reproduced, disseminated, and published to the public at large.
4.  At all times, the material reproduced had been represented to and by the Town, as Plaintiff's copyrighted song.
5.  Plaintiff made demand that the dissemination of the song cease. Defendants failed to heed this demand. Defendants' willfully infringed Plaintiff's copyright.
6.  Plaintiff further contends that Giacchino and the named Defendants defrauded him, the US Copyright Office, and this Honorable Court.

## V.
## PLAINTIFF'S ADMISSIONS OF "FACT"[10]

1.  The song "South Padre Island" was declared the "official town song" by the town's Board of Aldermen after Graham took the song to them at a town meeting.
2.  The Town of South Padre Island did not sell the song.
3.  The Town of South Padre Island included the song in its visitor's guide CD-ROM which was distributed for free to the public.
4.  Plaintiff Gary Graham holds a copyright to the lyrics of the song South Padre Island.
5.  Plaintiff Graham does not hold a copyright to the entire song called "South Padre Island".
6.  Plaintiff Graham developed the initial version of lyrics to the song and approached Pelican West to record the song.
7.  Damion Giacchino's band is called Pelican West.
8.  Giacchino/Pelican West changed the music to the song South Padre Island.
9.  Giacchino/Pelican West performed and recorded the song South Padre Island.
10. Giacchino/Pelican West provided the vocals that appear on the finished

---

[10] These admissions were previously submitted in the Joint Pretrial Order signed by then counsel for Defendant South Padre Island, Eduardo Garza

5

song South Padre Island.

11. Plaintiff Graham attended two Town meetings where the song was played, voted on, and declared the "official town song."

12. Plaintiff Graham voluntarily played the song for the entire audience in attendance at a town meeting.

13. Pelican West did not attend the meetings with Graham, but they knew about it.

14. Plaintiff Graham was pleased with the decision of the town to adopt the song as the official town song.

15. After declaring the song the official town song of the Town of South Padre Island, the town included the song in its visitor's guide cd-rom which was copied at the expense of the town and distributed for free.

16. Damion Giacchino's only criticism with respect to the use of the song by the Town of South Padre Island is that the visitor's guide cd-rom featuring the song was of poor quality, they had no criticism of the use of the song by the town.

17. Plaintiff Graham's intent was to have lyrics he wrote merged with Giacchino/Pelican West's music to create the song that appears on the audio cd called "South Padre Island."

18. Plaintiff provided Giacchino/Pelican West with lyrics and asked that they put music to the song South Padre Island.

19. The document labeled "Legal Agreement" specifically indicates that the lyrics to the song South Padre Island were written by Plaintiff Gary Graham.

20. The document labeled "Legal Agreement" specifically indicates that the music to the song South Padre Island was written by Damion Giacchino.

21. Plaintiff lodged a complaint with Defendant Town of South Padre Island regarding the quality and distribution of the CD ROM, and he insisted that Defendant cease any additional distribution and publication.

22. Defendant Town of South Padre Island retained the services of Harvest Multimedia to produce its Visitor's Guide CD-ROM containing the song "South Padre Island".

## VI.
## CONTESTED ISSUES OF FACT, AS KNOWN BY PLAINTIFF

1. Defendant Town of South Padre Island disputes that it committed any

violation of Plaintiff's copyright to lyrics of the song South Padre Island.
2. Defendant Town of South Padre Island disputes that it committed any intentional infringement of Plaintiff's copyright to lyrics of the song South Padre Island.
3. Defendant Town of South Padre Island disputes that in September of 2002, Plaintiff an illegally reproduced CD of the song South Padre Island being played by representatives of the Town of South Padre Island.
4. Defendant Town of South Padre Island disputes that the statements of joint intentions between Pelican West/Giacchino and Plaintiff made in Giacchino's affidavit are false and misleading.
5. Defendant Town of South Padre Island disputes that Plaintiff first learned of Giacchino's copyright to the music and vocal melody to the song South Padre Island when he read Defendant's Motion for Summary Judgment.
6. Defendant Town of South Padre Island disputes Plaintiff's contention that Giacchino/Pelican West had no authority to provide implied license to Defendant to use the song South Padre Island.
7. Damion Giacchino of Pelican West holds the copyright to the music and vocal melody to the song South Padre Island.
8. Plaintiff Graham entered into a deal with Pelican West that called for Pelican West to pay for everything to record the song, produce a finished CD they could sell off of the stage, and go to the radio stations at Pelican West's expense.
9. Plaintiff Graham expected Pelican West to make the song known to the public and get it distributed.
10. Damion Giacchino of Pelican West expected that the Town would use the song and play the song since it was the "official town song".
11. Both Plaintiff Graham and Pelican West undertook a joint effort to produce the melody and harmony to the song "South Padre Island."
12. Pelican West had the authority under the law to grant Defendant a non-exclusive license to use the song at issue.
13. The Town of South Padre Island did not take Plaintiff's copyrighted lyrics and utilize them in some illegal or inappropriate manner.
14. The Town of South Padre Island did not utilize the lyrics independently of the song "South Padre Island" in any way.
15. Plaintiff Graham brought the song "South Padre Island" to Defendant Town of South Padre Island.
16. The song "South Padre Island" was a cooperative and joint effort between

7

Plaintiff and Giacchino/Pelican West as conceded by Plaintiff.

17. Plaintiff intended his copyrighted lyrics to be merged with contributions from Giacchino/Pelican West in a collaborative effort to create the song South Padre Island.

18. Plaintiff and Pelican West decided to add the harmony to the song South Padre Island in a joint effort.

19. Giacchino/Pelican West had authority to provide an implied license to Defendant Town of South Padre Island to use the song South Padre Island.

20. Giacchino can *not* and does *not* hold a valid copyright to the "music and vocal melody", as he fraudulently represented to the United States Copyright Office.

21. Defendant Town considered the adoption of the song as its official song at Plaintiff's behest, and not Giacchino's.

22. Defendant Town continued to distribute and publish the song in the CD ROMs containing the song and otherwise, even after Plaintiff raised objections

23. Plaintiff lodged a complaint with a Town employee regarding the quality and distribution of the CD ROM, and lack of consideration to him, and he insisted that Town cease any additional distribution and publication.

24. The Town continued to distribute the CD ROM and publish the song otherwise, even after Plaintiff had publicized widely his objections aforesaid.

25. On March 12th 2001 Plaintiff and Giacchino entered into a valid common law copyright Contract, which states in pertinent part that "Gary Graham is [sic. "the"] composer of the lyrics."[i]

26. Plaintiff and Giacchino intended to earn money from the song, as evidenced by the distribution agreement between those parties.

## VII.

## AGREED PROPOSITIONS OF LAW[11]

1. Plaintiff holds a copyright to the lyrics of the song "South Padre Island".

## VIII.

## CONTESTED PROPOSITIONS OF LAW

---

[11] These agreed propositions of law were previously submitted in the Joint Pretrial Order signed by then counsel for Defendant South Padre Island, Eduardo Garza

1.  A joint work is prepared by two or more authors with the intention that their contributions be merged into inseparable and interdependent parts of a unitary whole. 17 U.S.C 101.

2.  A work is considered a joint work if authors collaborated with each other or if each prepared his or her contribution knowing and intending that it would be merged with the contributions of the other as a part of an integrated unit. 17 U.S.C. 101; see also Erickson v. Trinity Theater, Inc., 13 F3d 1061, 1068 (7th Cir. 1994).

3.  The critical element with respect to a joint work is the intention at the time the work is done that parts be combined into a unitary whole. Childress v. Taylor, 945 F.2d 500, 508-509(2nd Cir. 1991), Cloughston v. The American Academy of Orthopedic Surgeons, 930 F. Supp. 1156, 1159(W.D. Tex. 1996).

4.  The authors of a joint work are co-owners of the copyright in the work. 17 U.S.C 201.

5.  Authors of a joint work hold undivided interests in it, despite any differences in each author's contribution. Erickson, 13 F.3d at 1068; Childress, 945 F.2d at 508-509; Pye v. Mitchell, 574 F.2d 476 (9th Cir. 1978).

6.  Generally, all joint authors share equally in the ownership of copyright of a joint work. See Generally Goodman v. Lee, 988 F2d 619 (5th Cir. 1993).

7.  Joint authors enjoy all rights of authorship under 17 U.S.C. sec. 304.

8.  A co-owner of a copyright needs no consent to use or license the use of a work non-exclusively as each owner has the right to use or to license the use of the work subject to an accounting to the other co-owner for any profits. Childress v. Taylor, 945 F.2d 500, 505 (2nd Cir. 1991); Erickson v. Trinity

Theater, Inc., 13 F3d 1061, 1068 (7th Cir. 1994).

9. An authorization to a third party from one joint owner is a defense to an action against that party brought by the other joint owner.

10. A non exclusive license to use a joint work can be impliedly granted by the conduct and actions of a joint owner or copyright holder of a work. See Lulirama Ltd., Inc. vs. Axcess Broadcast Services, Inc., 128 F3d 872(5th Cir. 1997).

11. A non-exclusive implied license need not be evidenced by a writing, rather such a license may be implied from conduct. Lulirama Ltd., Inc. vs. Axcess Broadcast Services, Inc., 128 F3d 872, 879 (5th Cir. 1997); Carson v Dynegy, 344 F.3d 446, 451 (5th Cir. 2003); see generally CMS Software Design System Inc. v. Info Designs, Inc., 785 F.2d 1246, 1248 (5th Cir. 1986); and Batistse v Island Records, Inc., 179 F.3d 217, 222 (5th Cir. 1999).

12. Plaintiff artistically composed a poetic lyric, which he lawfully copyrighted on March 26th 2001 under USC Title 17, which Congress enacted under US Const. Art. 1, § 8, Clause 8.

13. Plaintiff obtained his valid copyright to the song lyrics for "South Padre Island" under the statutory "A Poor man's copyright" 17 USC.

14. The Town entered into a market and publication agreement with Defendant Harvest to re-record on a video disc CD-ROM a version containing the Plaintiff's copyrighted lyrics for promotion of their beachside resort city, which Giacchino and his band, Pelican previously had recorded.

15. All actual and proposed Defendants here intended to distribute widely such CD-ROMs, which they did, and from which they hoped to obtain economic

benefit.

16. Plaintiff's copyright was infringed, and he brought suit here in this Court for damages under the infringement provisions for damages of USC Title 17.

17. In the course of the Defendants' Summary Judgment proceedings, Plaintiff for the first time learned, that Pelican band leader, Giacchino had attempted to copyright both the "words and music" to the "song" "South Padre Island" on April 10th 2001, without informing Plaintiff of such copyright application, without Plaintiff's consent or permission, and contrary to two agreements between Plaintiff and that band leader, respectively of March 12th 2001 and June 6th 2001.

18. 17 USC § 501 establishes **strict liability** *per se* for any infringement, to wit: "[a]nyone who violates any of the exclusive rights of the copyright owner" is any infringer, whether innocent or intentional, and is strictly liable for any copyright infringement.

19. Defendants willfully infringed the copyright of Plaintiff by refusing to cease dissemination of the song until after a lawsuit was filed. Defendants owe damages and attorney's fees to Plaintiff.

20. There are few defenses, if any, to copyright infringement, and as Plaintiff conclusively demonstrates, and there is no defense available under the law for either Defendant.

## IX.
## PLAINTIFF'S EXHIBITS

A. Plaintiffs—

| EXHIBIT | MARKED: |
|---|---|
| Certificate of Registration; South Padre Island Song by Gary Graham | P-1 |
| Agreement For the Song "South Padres Island" | P-2 |
| Legal Agreement dated June 4, 2001 | P-3 |
| CD Rom; audio, entitled: South Padre Island Texas; "Where Texans kick their boots off" | P-4 |
| U.S. Copyright Office - Search results for South Padre Island | P-5 |
| Article from "Spotlight on Padre Island" newsletter | P-6 |

## X.
## PLAINTIFF'S WITNESSES

A.   Plaintiffs-

1. Mr. Paul Y. Cunningham, Jr.
   City Attorney
   Town of South Padre Island
   P.O. Box 3410
   South Padre Island, Texas 78597-3410
2. Damian Giacano
   Tom Johnson
   Pamela Rich
   Craig McWhinney
   P.O. Box 3737
   South Padre Island, Texas 78597
   Members of the Pelican West Band
3. Michael Chad Berry
   Jones & Davis, LLP
   15851 Dallas Pkwy
   Addison, Texas
4. Alderman Doyle Wells
   P.O. Box 3633
   South Padre Island, TX  78597
5. Alderman Rick Wells
   South Padre Island, TX  78597
6. Former Mayor Ed Cyganiewicz

## XI.

12

## SETTLEMENT

The parties mediated this case before the Honorable Felix Recio and an impasse was reached.

## XII.
## TRIAL

1. Plaintiff expects the probable length of trial to be 3-4 days.

## XIII.
## VOIR DIRE

Plaintiff's proposed Voir Dire and Jury Charge are forthcoming, but are not attached to this Pretrial Statement

Date: May 14 2005

Donald T. Cheatham
Attorney for Plaintiff, Gary Graham