IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GARY GRAHAM | § | |
|     Plaintiff, | § | |
| | § | CIVIL ACTION NO. B-03-084 |
| VS. | § | |
| | § | (JURY REQUESTED) |
| | § | |
| TOWN OF SOUTH PADRE ISLAND | § | |
| and HARVEST MULTIMEDIA, INC. | § | |
|     Defendants. | § | |

---

## AMENDED JOINT PRETRIAL ORDER

---

The parties to the above cause through their respective counsel of record enter into the following Joint Pretrial Order.

# I.
## APPEARANCE OF COUNSEL

***Plaintiff's Attorney***
Donald T. Cheatham
Law Office of Donald T. Cheatham
604 A West 9th Street
Austin, Texas 78701
(512) 494-1212 Telephone
(512) 494-1213 Facsimile

***Defendant South Padre Island's Attorneys***
Eileen M. Leeds, Esquire
Willette & Guerra, L.L.P.
1534 East 6th Street, Suite 200
Brownsville, Texas 78520
(956) 541-1846 Telephone
(956) 541-1893 Facsimile

***Defendant Harvest Multimedia's Attorneys***
Heriberto "Eddie" Medrano
Law Office of Heriberto Medrano,
2009 East Harrison. Suite B
Harlingen, Texas 78550
(956) 428-2412 Telephone
(956) 428-2495 Facsimile

# II.
## STATEMENT OF THE CASE

A.    <u>Plaintiff's Statement.</u>

1.    [1]Plaintiff Gary Graham [2] artistically composed a poetic lyric, which he law-fully copyrighted on March 26th 2001 under of the United States Code[3], Title 17, which Congress enacted under United States Constitution[4], Article 1, Section 8 Clause 8. Plaintiff obtained his valid **copyright** to the song lyrics for ***"South Padre Island"*** [5] under the statutory "A Poor Man's copyright" 17 USC.

2.    Plaintiff approached Pelican West[6] for the possibility of recording the song, and subsequently entered into two contracts with that band and Damion Giacchino[7], the band leader. Plaintiff entered into a distribution agreement with Pelican, wherein both entities clearly intended to profit from the song which Plaintiff had conceived and brought to fruition.

3.    Although Plaintiff had approached Defendant, Town of South Padre Island[8] about using the song as the "official" island town song, he never intended that Defendant

---

[1] Our Emphasis Added Throughout.
[2] Hereinafter referred to, as "Plaintiff"
   **All references hereinafter will be shortened. The complete reference first will appear, as a complete reference in Text. In a designated footnote, the reference will be in abbreviated form appearing within quotation marks. Thereafter in Text the designated abbreviation or acronym of what is attributed will appear only in quotation marks. The particular reference thereafter in text will contain solely the so referenced abbreviation or citation, as applicable, unless otherwise noted.**
[3] "USC".
[4] "US Const.".
[5] "Song".
[6] "Pelican"
[7] "Giacchino"
[8] "Town"

2

Town would distribute the song without his prior approval and consent, particularly as to the payment of royalties, *inter alia*. Plaintiff was delighted the Town wished to use the song, and happily anticipated some workable and mutually agreed to monetary consideration for his effort from Defendant Town.

4. Unbeknownst to Plaintiff, Defendant Town entered into a market and publication agreement with co-Defendant Harvest Multi Media Inc.[9] to re-record on a video disc CD-ROM, a version containing the Plaintiff's copyrighted song for promotion of their beachside resort city. By doing so, Defendant Town acknowledged publicly Plaintiff's ownership and rights regarding the lyrics. Defendant Town made no effort to ascertain whether or not Plaintiff agreed to allow the use of his copyrighted work without acknowledgement of copyright.

5. Both Defendants have acknowledged Plaintiff's secured copyright.

6. Harvest made no effort to ascertain the song's copyright or ownership.

7. Harvest made in excess of 5,000 multiple copies of the song, on behalf of Defendant Town, for which the Town compensated Harvest.

8. Defendants, Town and Harvest both intended to distribute widely such CD-ROMs, and otherwise use the Plaintiff's copyrighted work, which they did, and from which acts they hoped and intended to obtain economic benefit.

9. Both Defendants obtained benefit from their acts.

10. Both Defendants infringed Plaintiff's copyright, as a matter of law.

11. As a direct and proximate result of Defendants' actions in not abiding in any manner with the United States Copyright Act aforesaid, regarding Plaintiff's statutory and common law copyright rights, Defendants deprived Plaintiff of the statutory monetary and recognition benefits of his artistic endeavors and work, and is entitled to recover damages as provided for by law, including an award of

---

[9] "Harvest"

attorneys fees and court Costs. Plaintiff brought suit here in this Court for damages under the infringement provisions of USC Title 17.

12.   In the course of the Defendant Town's Summary Judgment proceedings, Plaintiff for the first time learned, that Pelican band leader, Giacchino on April 10, 2001 illegally obtained a copyright for both the words and music to the song, without consent or permission by Plaintiff, and contrary to two agreements between Plaintiff and that band leader, respectively of March 12th 2001 and June 6th 2001.

13.   Giacchino was well aware on April 10, 2001 that Plaintiff had copyrighted the lyrics to the song on March 26th 2001.

14.   Plaintiff incorporates herein by this reference all of the pleadings, documents, and exhibits of this Court's Record in this Statement in their entireties.

**B.   Defendant Town of South Padre Island's Statement.**

This case involves a dispute regarding the former official town song of Defendant Town of South Padre Island entitled "South Padre Island."  Plaintiff Gary Graham holds a copyright to the lyrics of that song (lyrics only).    Plaintiff does not hold a copyright to the entire song called "South Padre Island". Damion Giacchino member of the Pelican West band actually holds the copyright to the music and vocal melody to the song. Plaintiff developed the initial version of lyrics to the song and approached Pelican West with them to record the song because he thought they were a good group. Giacchino/Pelican West re-wrote the original lyrics provided by Graham, changed the music to the song, performed and recorded the song, and provided the vocals that appear on the finished song as it appears on the CD or compact disc of the song and Defendant's visitor's guide CD-ROM.

4

According to Plaintiff Graham, he entered into a deal with Pelican West that called for Pelican West to pay for everything to record the song, produce a finished CD they could sell off-stage, and go to the radio stations at Pelican West's expense. Plaintiff expected Pelican West to make the song known to the public and get it distributed. Plaintiff asserts he was asked to bring the song to a Town meeting. Plaintiff attended two Town meetings where the song was played, voted on, and declared the "official town song." Pelican West did not attend the meetings with Graham, but they knew about it, voiced no objection to it, were "thrilled" about it, and wanted it to happen. Plaintiff Graham was pleased with the decision of the town to adopt the song as the official town song.

Plaintiff never asked Defendant Town of South Padre Island for any money associated with the song and he did not discuss royalties with them either. After declaring the song the official town song of the Town of South Padre Island, the town included the song in its visitor's guide CD-ROM which was produced at the expense of the town and distributed for free. Damion Giacchino of Pelican West expected that the Town would use the song and play the song since it was the "official town song". Damion Giacchino's only criticism with respect to the use of the song by the Town of South Padre Island is that the visitor's guide CD-ROM featuring the song was of poor quality. They had no criticism of the use of the song by the town.

C.    **Defendant Harvest Multimedia's Statement.**

Harvest Multimedia adopts the statement of the case submitted by the Town of South Padre Island. In addition, Harvest Multimedia states the following:

Harvest Multimedia is a small three person advertising company operating out of the garage of Marc Longoria, the manager of Harvest Multimedia, located in Harlingen, Texas.

5

Harvest Multimedia was hired by the Town of South Padre Island to produce a CD-ROM whose contents included photographs and the 'official' song of the Town of South Padre Island for the purpose of promoting tourism to the Town of South Padre Island. The Town of South Padre Island provided most of the photos, information and the 'official' song used by Harvest Multimedia in producing the CD-ROM.

Harvest Multimedia specifically inquired of representatives of the Town of South Padre Island if the materials it tendered to Harvest Multimedia for use in the CD-ROM belonged to and could be used by the Town of South Padre Island in this promotional CD-ROM. Representatives from the Town of South Padre Island stated to Harvest Multimedia that the materials tendered could be used without any problem.

The disc containing the 'official' song of the Town of South Padre Island tendered to Harvest Multimedia did not have any label or writing on it identifying the song or the group performing the song. Because no such information appeared on or accompanied the CD-ROM, Harvest Multimedia verified the Town of South Padre Island's permission to use the song by calling and asking the Town itself.

## III.
## JURISDICTION

This court has jurisdiction to hear this case as it involves federal questions associated with Title 17 of the United States Code.

## IV.
## MOTIONS

1.     Defendant Town of South Padre Island filed a Motion for Summary Judgment on March 10, 2004. Plaintiff responded and Defendant filed a reply to said response. The court granted in part and denied in part Defendant Town of South

6

Padre Island's Motion for Summary Judgment on March 30, 2005.

2.  Plaintiff filed a Motion for Leave to Amend Complaint and Add Indispensable Third Party. Defendant Town of South Padre Island filed a response to this motion in opposition. The court denied Plaintiff's Motion to Amend Complaint on March 30, 2005.

## V.
## THE PARTIES' CONTENTIONS

**A.**   **Plaintiff's Contentions.**

1.  Defendants infringed Plaintiff's copyright.

2.  Defendants owe statutory damages to Plaintiff pursuant to statute for the copyright infringement.

3.  Should Plaintiff prevail by jury verdict finding that the Defendants did in fact infringe Plaintiff's copyright, this Court should enter judgment for each such multiple copyright infringement, as provided by law. Such award would be the multiple statutory damages multiplied by the sum of the number of copies made of the illegally reproduced copyrighted song, added to the number of times SPI had the song aired in mass-media commercials as well as, reasonable attorney's fees and costs.

4.  Defendants failed to investigate and to ascertain who held the valid copyright for the material they reproduced, disseminated, and published to the public at large.

5.  At all times relevant hereto, Defendant Town represented, that the material Defendants reproduced was, is and has been Plaintiff's copyrighted song.

6.  Plaintiff properly demanded that the dissemination of the song cease. Defendants failed to heed this demand. Defendants' willfully infringed Plaintiff's copyright by doing so, as a matter of law.

7.  Plaintiff further contends that Giacchino and Pelican defrauded him, the US Copyright Office, and this Honorable Court.

7

**B.**    **Defendant Town of South Padre Island's Contentions.**

1.    Defendant Town of South Padre Island contends that it did not commit any act of copyright infringement of Plaintiff's copyright to the lyrics of the song South Padre Island.

2.    Defendant contends that the song "South Padre Island" constitutes a joint work under 17 U.S.C. 101.

3.    Defendant further contends that it had an implied license/implied consent derived from the conduct and actions of Plaintiff and Giacchino/Pelican West to use the song entitled "South Padre Island."

4.    Defendant further contends that in addition to the implied license provided to Defendant by virtue of Plaintiff's conduct, it had authority to distribute the song from a joint author of that work (Giacchino/Pelican West) based on that joint author's conduct.

5.    Defendant further contends that Plaintiff knew and intended that his contribution to the song South Padre Island would be merged with the contributions of the contributions of Giacchino/Pelican West as part of an integrated unit with the intention of creating a unitary whole in the form of a song.

6.    Defendant further contends that Plaintiff and Giacchino/Pelican West were authors of the joint work called "South Padre Island", and that they each  hold undivided interests in it.

7.    Defendant further contends that there is absolutely no evidence before the court that Plaintiff ever intended his lyrics to stand alone with no music.

8

8.    Defendant further contends that neither Giacchino/Pelican West or Plaintiff needed each other's consent to use or license the use of the song South Padre Island as they each have the right to use or to license the use of the song subject to an accounting to the other co-owner for any profits.

9.    Defendant further contends that an authorization from Giacchino/Pelican West or from Plaintiff by virtue of their conduct is a defense to an action against Defendant that could be brought by either party.

## C.    Defendant Harvest Multimedia's Contentions.

Harvest Multimedia adopts all the 'contentions' stated by Defendant Town of South Padre Island and in addition states the following:

1.    Harvest Multimedia contends it exercised due diligence in determining that the Town of South Padre Island did have the right to ask Harvest Multimedia to incorporate the 'official' song in its production of the CD-ROM by affirmatively asking the Town's representatives if it had the right to use the song to which Harvest Multimedia received assurances that it did.

2.    Harvest Multimedia contends that if there was some copyright infringement, it was not by Harvest Multimedia's actions.

## VI.
## ADMISSIONS OF FACT

1.    The song "South Padre Island" was declared the "official town song" by the town's Board of Aldermen after Graham took the song to them at a town meeting.

2.    The Town of South Padre Island did not sell the song or music.

3.    The Town of South Padre Island included the song in its visitor's guide CD-ROM which was distributed for free to the public.

4.    Plaintiff Gary Graham holds a copyright to the lyrics of the song, "South Padre Island.

5.    Plaintiff Graham does not hold a copyright to the entire song called "South Padre Island".

6.    Plaintiff Graham developed the initial version of lyrics to the song and approached Pelican West to record the song.

7.    Damion Giacchino's band is called Pelican West.

8.    Giacchino/Pelican West changed the music to the song "South Padre Island."

9.    Giacchino/Pelican West performed and recorded the song, "South Padre Island.

10.    Giacchino/Pelican West provided the vocals that appear on the finished song, "South Padre Island".

11.    Plaintiff Graham attended two Town meetings where the song was played, voted on, and declared the "official town song."

12.    Plaintiff Graham voluntarily played the song for the entire audience in attendance at a town meeting.

13.    Pelican West did not attend the meetings with Graham, but they knew about it, voiced no objection to it, were "thrilled" about it, and wanted it to happen.

14.    Plaintiff Graham was pleased with the decision of the town to adopt the song as "the official town song".

15.    Plaintiff Graham never asked Defendant Town of South Padre Island for any money associated with the song "South Padre Island," and he did not discuss royalties with them.

16.    After declaring the song "the official town song" of the Town of South Padre Island, the town included the song in its visitor's guide CD-ROM, which was produced at the expense of the town and distributed for free.

17.    Damion Giacchino's only criticism with respect to the use of the song by the Town of South Padre Island is that the visitor's guide CD-ROM featuring the

10

song was of poor quality, but he had no criticism of the use of the song by the town.

18. Plaintiff provided Giacchino/Pelican West with lyrics so that they could put music to the song South Padre Island.

19. The document labeled "Legal Agreement" specifically indicates that the music to the song South Padre Island was written by Damion Giacchino.

20. Plaintiff lodged a complaint with Defendant Town of South Padre Island regarding the quality and distribution of the CD ROM, and he insisted that Defendant cease any additional distribution and publication.

21. Defendant Town of South Padre Island retained the services of Harvest Multimedia to produce its Visitor's Guide CD-ROM containing the song "South Padre Island".

# VII.
# CONTESTED ISSUES OF FACT

1. Defendant Town of South Padre Island disputes that it committed any violation of Plaintiff's copyright to lyrics of the song, "South Padre Island".

2. Defendant Town of South Padre Island disputes that it committed any intentional infringement of Plaintiff's copyright to lyrics of the song South Padre Island.

3. Defendant Town of South Padre Island disputes that in September of 2002, Plaintiff heard an illegally reproduced CD of the song South Padre Island being played by representatives of the Town of South Padre Island.

4. Defendant Town of South Padre Island disputes that the statements of joint intentions between Pelican West/Giacchino and Plaintiff made in Giacchino's affidavit are false and misleading.

5. Defendant Town of South Padre Island disputes that Plaintiff first learned of Giacchino's copyright to the music and vocal melody to the song South Padre Island when he read Defendant's Motion for Summary Judgment.

6. Defendant Town of South Padre Island disputes Plaintiff's contention that Giacchino/Pelican West had no authority to provide an implied license to

Defendant to use the song South Padre Island.

7.  Whether Damion Giacchino of Pelican West holds the copyright to the music and vocal melody to the song South Padre Island.

8.  Plaintiff Graham entered into a deal with Pelican West that called for Pelican West to pay for everything to record the song, produce a finished CD they could sell off of the stage, and go to the radio stations at Pelican West's expense.

9.  Plaintiff Graham expected Pelican West to make the song known to the public and get it distributed.

10. Damion Giacchino of Pelican West expected that the Town would use the song and play the song since it was the "official town song".

11. Both Plaintiff Graham and Pelican West undertook a joint effort to produce the melody and harmony to the song "South Padre Island."

12. Damion Giacchino had the authority under the law to grant Defendant a non-exclusive license to use the song at issue.

13. The Town of South Padre Island did not take Plaintiff's copyrighted lyrics and utilize them in some illegal or inappropriate manner.

14. The Town of South Padre Island did not utilize the lyrics independently of the song "South Padre Island" in any way.

15. Plaintiff Graham brought the song, "South Padre Island," to Defendant Town of South Padre Island.

16. The song "South Padre Island" was a cooperative and joint effort between Plaintiff and Giacchino/Pelican West as conceded by Plaintiff.

17. Plaintiff intended his copyrighted lyrics to be merged with contributions from Giacchino/Pelican West in a collaborative effort to create the song," South Padre Island".

18. Plaintiff and Pelican West decided to add the harmony to the song, "South Padre Island" in a joint effort.

19. Giacchino/Pelican West had authority to provide an implied license to Defendant Town of South Padre Island to use the song, "South Padre Island".

20. Giacchino can *not* and does *not* hold a valid copyright to the "music and vocal

12

melody", as he fraudulently represented to the United States Copyright Office.

21. Defendant Town considered the adoption of the song as its official song at Plaintiff's behest, and not Giacchino's.

22. Defendant Town continued to distribute and publish the song in the CD- ROMs containing the song and otherwise, even after Plaintiff raised objections

23. Plaintiff lodged a complaint with a Town employee regarding the quality and distribution of the CD-ROM, and lack of consideration to him, and he insisted that Town cease any additional distribution and publication.

24. The Town continued to distribute the CD-ROM and publish the song otherwise, even after Plaintiff had publicized widely his objections aforesaid.

25. On March 12th, 2001 Plaintiff and Giacchino entered into a valid common law copyright Contract, which states in pertinent part that "Gary Graham is [sic. "the"] composer of the lyrics."

26. Plaintiff and Giacchino intended to earn money from the song, as evidenced by the distribution agreement between those parties.

27. The document labeled "Legal Agreement" specifically indicates that the lyrics to the song South Padre Island were written by Plaintiff Gary Graham.

28. Defendant Town of South Padre Island retained the services of Harvest Multimedia to produce its Visitor's Guide CD-ROM containing the song "South Padre Island".

29. Defendant Town of South Padre Island provided Harvest Multimedia with an unlabeled copy in CD format of the song "South Padre Island" and instructed Harvest Multimedia to use same in the production of the CD-ROM.

30. Harvest Multimedia specifically inquired of the representatives of the Town of South Padre Island if in fact it was permissible for the use of the song "South Padre Island" in the CD-ROM it was asked to produce and received assurances from same that the Town of South Padre Island did have the authority to use the song and that in fact the song was the 'official' song of the Town of South Padre Island.

31. Plaintiff Gary Graham contacted by phone Defendant Harvest Multimedia and inquired of same as to how Harvest Multimedia had acquired the song, "South Padre Island" used in the CD-ROM.

32. After explaining to Plaintiff Gary Graham that the song "South Padre Island" had been provided to Harvest Multimedia by representatives of the Town of South Padre Island for use in the promotional CD-ROM with assurances that is was proper to do so, Plaintiff Gary Graham stated to Harvest Multimedia that he did not intend to sue Harvest Multimedia because he (Graham) did not believe Harvest Multimedia had done anything wrong.

33. Plaintiff Graham's intent was to have lyrics he wrote merged with Giacchino/Pelican West's music to create the song that appears on the audio CD called "South Padre Island."

## VIII.
## AGREED PROPOSITIONS OF LAW

1. Plaintiff holds a copyright to the lyrics of the song "South Padre Island".

## IX.
## CONTESTED PROPOSITIONS OF LAW

1. A joint work is prepared by two or more authors with the intention that their contributions be merged into inseparable and interdependent parts of a unitary whole. 17 USC §101.

2. A work is considered a joint work if authors collaborated with each other or if each prepared his or her contribution knowing and intending that it would be merged with the contributions of the other as a part of an integrated unit. 17 USC. §101; see also, *Erickson v. Trinity Theater, Inc.*, 13 F3d 1061, 1068 (7th Cir. 1994).

3. The critical element with respect to a joint work is the intention at the time the work is done that parts be combined into a unitary whole. *Childress v. Taylor,*

14

945 F.2d 500, 508-509(2nd Cir. 1991), *Cloughston v. The American Academy of Orthopedic Surgeons,* 930 F. Supp. 1156, 1159(W.D. Tex. 1996).

4. The authors of a joint work are co-owners of the copyright in the work. 17 USC §201.

5. Authors of a joint work hold undivided interests in it, despite any differences in each author's contribution. *Erickson,* 13 F.3d at 1068; *Childress,* 945 F.2d at 508-509; *Pye v. Mitchell,* 574 F.2d 476 (9th Cir. 1978).

6. Generally, all joint authors share equally in the ownership of copyright of a joint work. See Generally, *Goodman v. Lee,* 988 F2d 619 (5th Cir. 1993).

7. Joint authors enjoy all rights of authorship under 17 USC §304.

8. A co-owner of a copyright needs no consent to use or license the use of a work non-exclusively as each owner has the right to use or to license the use of the work subject to an accounting to the other co-owner for any profits. *Childress v. Taylor,* 945 F.2d 500, 505 (2nd Cir. 1991); and, *Erickson v. Trinity Theater, Inc.,* 13 F3d 1061, 1068 (7th Cir. 1994).

9. An authorization to a third party from one joint owner is a defense to an action against that party brought by the other joint owner.

10. A non exclusive license to use a joint work can be impliedly granted by the conduct and actions of a joint owner or copyright holder of a work. See, *Lulirama Ltd., Inc. v. Axcess Broadcast Services, Inc ,* 128 F3d 872(5th Cir. 1997).

11. A non-exclusive implied license need not be evidenced by a writing, rather such a license may be implied from conduct. *Lulirama Ltd., Inc. v. Axcess Broadcast Services, Inc. ,* 128 F3d 872, 879 (5th Cir. 1997); *Carson v Dynegy,* 344 F.3d 446, 451 (5th Cir. 2003); and please see generally, *CMS Software Design System Inc. v. Info Designs, Inc.,* 785 F.2d 1246, 1248 (5th Cir. 1986); and *Batistse v Island Records, Inc.,* 179 F.3d 217, 222 (5th Cir. 1999).

12. "When the totality of the parties' conduct indicates an intent to grant such permission [to use the copyrighted material], the result is a legal nonexclusive licence." *Lulirama Ltd., Inc. v. Axcess Broadcast Services, Inc. ,* 128 F.3d

872, 879 (5th Cir. 1997) (quoting 3 Melville B. Nimmer & David Nimmer, *Nimmer, On Copyright* § 10.03[A] (1995)).

13.    Plaintiff artistically composed a poetic lyric, which he lawfully copyrighted on March 26th 2001 under USC Title 17, which Congress enacted under US Const. Art. 1, § 8, Clause 8.

14.    Plaintiff obtained his valid copyright to the song lyrics for "South Padre Island" under the statutory "A Poor man's copyright" USC Title 17.

15.    Based on this Court's rulings, there has been a finding that both Damian Giacchino and Gary Graham were co-authors of a joint work, i.e., the song "South Padre Island". (See p.19 of the Court's Order).

16.    The Town entered into a market and publication agreement with Defendant Harvest to re-record on a video disc CD-ROM a version containing the Plaintiff's copyrighted lyrics for promotion of their beachside resort city, which Giacchino and his band, Pelican previously had recorded.

17.    Whether all actual and proposed Defendants here intended to distribute widely such CD-ROMs, which they did, and from which they hoped to obtain economic benefit.

18.    Whether Plaintiff's copyright was infringed, and he brought suit here in this Court for damages under the infringement provisions for damages of USC Title 17.

19.    Whether in the course of the Defendants' Summary Judgment proceedings, Plaintiff for the first time learned, that Pelican West band leader, Giacchino had attempted to copyright both the "words and music" to the "song" "South Padre Island" on April 10, 2001, without informing Plaintiff of such copyright application, without Plaintiff's consent or permission, and contrary to two agreements between Plaintiff and that band leader, respectively of March 12, 2001 and June 6, 2001.

20.    Whether 17 USC § 501 establishes **strict liability** *per se* for any infringement, to wit: "[a]nyone who violates any of the exclusive rights of the copyright owner" is

any infringer, whether innocent or intentional, and is strictly liable for any copyright infringement.

21.     Whether Defendants willfully infringed the copyright of Plaintiff by refusing to cease dissemination of the song until after a lawsuit was filed. Defendants owe damages and attorney's fees to Plaintiff.

22.     Whether there are few defenses, if any, to copyright infringement, and as Plaintiff conclusively demonstrates, and there is no defense available under the law for either Defendant.

## X.
## EXHIBITS

**A.**     **Plaintiff's Exhibits**

**EXHIBIT:**                                                                              **MARKED:**

1. Certificate of Registration; South Padre Island          P-1
   Song by Gary Graham.
2. Agreement For the Song "South Padres Island"             P-2.
3. Legal Agreement dated June 4, 2001                       P-3.
4. CD Rom; audio, entitled: South Padre Island             P-4
   Texas; "Where Texans kick their boots off"
5. U.S. Copyright Office - Search results for              P-5.
   South Padre Island
6. Copyright application Giacchino filed                    P-6
7. Giacchino's summary judgment affidavit                   P-7.

**B.**     **Defendants' Exhibits**

Please see attached Defendant Town of South Padre Island's Exhibit List and Defendant Harvest Multimedia's Exhibit List.

## XI.
## WITNESSES

**A.**     **Plaintiff's Witnesses**

1.   Mr. Paul Y. Cunningham, Jr.
     City Attorney
     Town of South Padre Island
     P.O. Box 3410

South Padre Island, Texas 78597-3410

2. Damian Giacchino
   Tom Johnson
   Pamela Rich
   Craig McWhinney
   P.O. Box 3737
   South Padre Island, Texas 78597
   Members of the Pelican West Band

3. Michael Chad Berry
   Jones & Davis, LLP
   15851 Dallas Pkwy
   Addison, Texas

4. Alderman Doyle Wells
   P.O. Box 3633
   South Padre Island, TX  78597

5. Alderman Rick Wells
   South Padre Island, TX  78597

6. Former Mayor Ed Cyganiewicz

**B.**    **Defendants' Witnesses**

Please see attached Defendant Town of South Padre Island's Witness List and Defendant Harvest Multimedia's Witness List.


# XII.
# SETTLEMENT

The parties mediated this case before the Honorable Felix Recio and an impasse was reached.

# XIII.
# TRIAL

1.    Probable length of trial is expected to be 4-5 days.

2.    The only logistical problems the parties may encounter is the availability of independent witnesses not under the control of any party to testify at trial.

# XIV.
# ATTACHMENTS

1.    Proposed Questions for voir dire examination from Defendants Town of South Padre Island and Harvest Multimedia.

2.    Plaintiff's Proposed Charge.

3.    Proposed Jury Instructions from Defendants Town of South Padre Island and Harvest Multimedia.

Date: _____


_____
UNITED STATES DISTRICT JUDGE

APPROVED:


Date: 7/12/05

Donald T. Cheatham w/p NS
Donald T. Cheatham
Attorney for Plaintiff


Date: 7/12/05

Eileen M. Leeds w/p NS
Eileen M. Leeds
Attorney for Defendant Town of South Padre Island

Date: 7/12/05

Eddie Medrano w/p NS
Heriberto A "Eddie" Medrano
Attorney for Defendant Harvest Multimedia


20